## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| KANDY WOODRUFF, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 6:16-CV-0593-VEH** |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Kandy Woodruff ("Woodruff") brings this action under 42 U.S.C. § 405(g).  Woodruff seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Woodruff filed her application on June 25, 2012.  After that, Woodruff exhausted the administrative remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

After reviewing the entire record, this Court **REVERSES** and **REMANDS** the

Commissioner's decision.

## II.  RELEVANT BACKGROUND

Woodruff was 33 years old at the time of her hearing with the ALJ. (Tr. 14-16). Her education is limited, but she can read and write in English. (*Id.* at 38-39, 56, 203). Most of her past work is in retail and fast food. (*Id.* 214). The vocational expert analyzed Woodruff's past work experience as a cashier, fast food worker, and managerial fast food worker. (*Id.* at 37-38). Woodruff claims disability based on rheumatoid arthritis. (*Id.* at 204).

The alleged onset date is August 2, 2009. (*Id.* at 50). On June 25, 2012, Woodruff filed an application for DIB and SSI. (*Id.*). The Social Security Administration denied that application on September 7, 2012. (*Id.*). On April 21, 2014, Administrative Law Judge Cynthia W. Brown held a video hearing. (*Id.*). The ALJ issued her decision on June 12, 2014, which was unfavorable to Woodruff. (*Id.* at 50-58). The ALJ determined that Woodruff suffers from "chondromalicia; chronic pain syndrome; morbid obesity; and sciatica." (*Id.* at 53) (emphasis omitted). In her opinion, the ALJ found that Woodruffs's impairments did not meet the severity of the ones included in the Code of Federal Regulations. (*Id.*).  Woodruff requested the Appeals Council review her claim. (*Id.* at 1-3). They refused. (*Id.*).

Woodruff filed her Complaint in the Northern District of Alabama on April 13,

2016. (Doc. 1). Woodruff filed her brief in support of her Complaint on June 26, 2017. (Doc. 11). The Commissioner responded on July 21, 2017. (Doc. 12).

## III.  STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide

the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

4

sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V.    FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2.  The claimant engaged in substantial gainful activity during the following periods: the second quarter of 2011 (Exhibit 5D) (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.  The claimant has the following severe impairments: chondromalicia; chronic pain syndrome; morbid obesity; and sciatica (20 CFR 404.1520(c) and 416.920(c)).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must have the option to sit or stand thirty (30) minutes at a time in performance of her duties. She can occasionally reach overhead with the right upper extremity.

7.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8.  The claimant was born on [Redacted] and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-17) (emphasis omitted).

## VI.  ANALYSIS

### A.  The ALJ's Credibility Determination

"Where an agency's decision concerns specific persons based upon determination of particular facts and the application of general principles to those facts, courts 'expect the parties to present specific evidence and closely reasoned arguments, and ... demand that the decisionmaker's opinion indicate an appropriate consideration of the evidence and arguments presented.'" *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (quoting *Harborlite Corp. v. ICC*, 613 F.2d 1088, 1093 n. 11 (D.C. Cir. 1979)). "[W]here proof of a disability is based upon subjective

evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.*

Further, "[t]he evidence from the hearing is required to be recited in detail in the ALJ's written decision." *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985) (citing 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.953; *Coward v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "[T]he ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented at the previous hearing or any subsequent hearings." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing other sources).

In this case, the Court is disturbed by the ALJ's characterization of the evidence. First, the ALJ states in her decision: "Despite the claimant's allegations of disabling pain, the claimant has not had any treatment since 2012 <u>for any impairment</u>." (Tr. 54) (emphasis added).[2] However, the record clearly shows treatment on February 19, 2013, by Dr. Lee. (Tr. 367) (noting that Woodruff was there, in part, to follow up on her rheumatoid arthritis). Further, the hearing transcript

---

[2] The Commissioner's brief attempts to soften this broad statement by stating that "[Woodruff] has had little to no treatment since 2012 for any impairment." (*See* Doc. 12 at 10).

states the following:

> [ALJ] All right, and then - - and then you went to Dr. Ali. When did you start going to Dr. Ali?

> [Woodruff] This month, April the 2nd.

(Tr. 33). The hearing took place on April 21, 2014. (Tr. 14). Thus, the record directly contradicts the ALJ's statement. It is one thing to discredit evidence, it is another to ignore it, and it is yet another thing to say it does not exist. This is one reason that the Court cannot determine if the ALJ did her job in reviewing the evidence in this case and applying the correct law.

Second, the ALJ stated that "[t]he only limitation ever noted by her treating physician is that her ability to sleep is affected by the pain." (Tr. 54) (citing Exhibit 2F, page 2; Exhibits 1F-2F and 6F-7F). It is true that several of the reports list trouble sleeping as an effect from pain. (*See e.g.,* Tr. 277). However, on June 15, 2010, Dr. Laubenthal noted in the "History Of Present Illness" that "[t]he pain is worse at all times and [s]he states the pain does not radiate. She reports loss of motion. . . She is unable to forward flex and externally rotate." (Tr. 258). Even the same report that the ALJ pincited to support her assertion, Exhibit 2F at page 2, notes that "[Woodruff] has pain with range of motion of left knee. . . . She has pain with range of motion of the right shoulder." (Tr. 275). Also, Woodruff points out that Dr. Raquib noted

limitations in her ability to walk, stand, and sit. (Doc. 11 at 10) (citing Tr. 346). The ALJ's sweeping generalization is contradicted by the evidence.

Third, the ALJ notes that Woodruff claimed that "she has been unable to afford treatment since getting a divorce and losing her insurance coverage." (Tr. 54). However, the ALJ does not adequately state how she considered that piece of evidence in her overall analysis. (*See* Doc. 11 at 9-10). The Commissioner failed to respond to Woodruff's arguments on this point.

Fourth, there is some evidence indicating that Woodruff needed to "alternate among sitting, standing, and walking every thirty minutes." (Doc. 11 at 8); (*c.f.* Tr. 32, 346). The vocational expert's testimony indicates that this is a crucial fact to whether Woodruff could work in any job with those limitations:

> [Woodruff's Attorney] I need to make sure that I clearly understand your testimony regarding the alternating sitting, standing, and walking every 30 minutes. Are you - - are you saying that there are no jobs that would accommodate such a restriction, or were you saying something different from that?
>
> [Vocational Expert] No, I would - - I would say there are no jobs in which she would - - you'd have to sit 30 minutes, walk 30 minutes, and stand 30 minutes. I'd say that would erode the base considerably.

(Tr. 41-42). The ALJ noted the alleged limitations in walking, standing, and sitting (Tr. 53), but she did not make a clear credibility finding on Woodruff's purported need to walk. The ALJ did determine that Woodruff "should be able to sit and stand

thirty (30) minutes at a time in an effort to reduce her pain from staying in one position." (Tr. 56). However, the Court cannot discern why the ALJ credited Woodruff's testimony on sitting and standing but not walking.[3] Given the vocational expert's testimony, this is a crucial point.

Fifth, without citation, the ALJ wrote that, at the hearing, Woodruff stated that "she is unable to do <u>anything</u>." (Tr. 55) (emphasis added). However, that assertion is not supported by the record. For example, at the hearing, Woodruff noted that she tries to do the dishes. (Tr. 28-30). However, she cannot "stand[ ] in one place" "without a break" for more than "three minutes" to wash dishes. (*Id.*). She doesn't dust. (*Id.*). She mops sometimes, "but it's the same [problem] with washing dishes." (*Id.*).

The Court should not have to go back and check citations to the record to see if they actually support the assertions in the ALJ's decision. The fact that the Court

---

[3] The Commissioner attempts to shore up the ALJ's deficiencies in her brief. (Doc. 12 at 11). In doing so, the Commissioner cites to the entirety of finding of fact/conclusion of law number 6, and more specific parts of the record, to assure the Court that the ALJ did the work she was supposed to do. (*See id.*). However, this Court will not "affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'" *Watkins v. Commissioner*, 457 F. App'x 868, 872 (11th Cir. 2012) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

On a related note, Woodruff argues that "the ALJ did not incorporate the side effects of Woodruff's medications into her RFC finding," namely her complaints of drowsiness. (*See* Doc. 11 at 9). The ALJ noted the drowsiness, but did not say why she does not credit it. (Tr. 54-55). Counsel for the Commissioner makes a more defined argument on drowsiness. (*See* Doc. 12 at 11-12). This is essentially a post hoc rationale. Upon remand, the ALJ should determine the side effects of Woodruff's medication.

felt compelled to do so erodes its confidence in the ALJ's decision to the point where a remand is the only appropriate course of action. Woodruff may not be disabled,[4] but for the ALJ to determine that, the ALJ "is required to build an accurate and logical bridge from the evidence to his or her conclusion." *See Flentry-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. March 27, 2008) (citing *Baker v. Barnhart*, No. 03 C 2291, 2004 WL 2032316, at *8 (N.D. Ill. Sept. 9, 2004)). For the aforementioned reasons, the ALJ's decision is not supported by substantial evidence. Accordingly, the ALJ's decision is **REVERSED** and **REMANDED**.

## B.    The ALJ's Duty to Develop the Record

Having determined that the ALJ improperly considered the evidence in the record, the Court declines to reach the issue of whether the ALJ breached her duty to fully and fairly develop the record. However, on remand, the ALJ is advised to further develop the record as necessary to determine the issues pertinent to Woodruff's potential disability.

## VII.    CONCLUSION

The Court declines to state that Woodruff is disabled based on the record

---

[4] The Commissioner argues that "the ALJ articulated a number of other factors supporting the credibility determination, most of which [Woodruff] does not dispute or discuss in her brief." (Doc. 12 at 12). Even if this is true, Woodruff does not have to challenge every single piece of the ALJ's decision, and her failure to do so does not mean that her appeal is without merit. Woodruff is entitled to appeal her case based upon her winning arguments without disputing every single possible point.

before the Court. However, before ruling adversely to her, the ALJ must address her allegations fully and fairly. Based upon the Court's evaluation of the evidence and the parties' submissions, the Court finds that the ALJ erred in her consideration of the evidence in this case. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

      **DONE** and **ORDERED** this 24th day of January, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge